UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES D. GREEN,

          Plaintiff,

     v.                                              Case No. 24-cv-0033-bhl

TRICIA EIKLAND et al.,

          Defendants.

**DECISION AND ORDER DENYING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

      Plaintiff James Green, an inmate at the Green Bay Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth Amendment claims based on allegations that Defendants Tricia Eikland, Zachary Lange, and Ronald Benisch were deliberately indifferent to the risk of substantial harm that Green posed to himself. On October 25, 2024, Defendants moved for summary judgment. For the reasons explained below, the Court will deny the motion.

### BACKGROUND

      During the relevant time, Green was incarcerated at the Waupun Correctional Institution, where Defendants worked as officers. The cell hall in which Green was housed has four floors. Green was housed on the second floor. At about 12:35 p.m. on October 16, 2023, Eikland arrived on the third floor to facilitate the collection of food trays and trash. Eikland explains that it is very noisy in the afternoon; there are more than 300 inmates in the cell hall, and they often yell to one another. She asserts that it is not possible to hear what every inmate on a different floor is saying. Dkt. Nos. 28, 37 at ¶¶1-10.

According to Green, just before Eikland arrived in the cell hall, he began to yell that he was suicidal and was about to use a razor to kill himself. Green asserts that several other inmates also tried to get him help by yelling that he was suicidal. Eikland asserts that at no time did she hear Green say anything about engaging in self-harm or wanting to commit suicide with a razor, nor did she hear him call out her name. Green insists that Eikland heard him and others yelling about him being suicidal. He states that he and several other inmates heard her respond, "I hear you, quit yelling." According to Green, she left the area without helping him. Dkt. No. 28, 37 at ¶¶11-13; Dkt. No. 36 at ¶¶3-6.

Green asserts that, shortly after Eikland left, he and other inmates again began to yell "Green suicidal." He states that Benisch arrived on his floor to move an inmate. Benisch explains that he spoke to the inmate while he got ready, then began to escort him to a different area of the prison. He states that he briefly stopped at another inmate's cell front (not Green's) and then he exited the area. Green asserts that, as Benisch walked past his cell, he loudly said, "CO I'm suicidal, look I have a razor." Green states that Benisch looked at him as he walked past his cell but did not stop or interact with him. According to Green, he then yelled, "CO, so you gonna keep walking I'm about to kill myself, I'm suicidal." Green further asserts that he was holding up a razor to the bars of his cell and that the razor was visible at all times. Benisch asserts that he never heard Green threatening to harm himself and never looked in his cell or observed a razor. He further highlights that the inmate he was escorting never informed him that he heard Green threating to harm himself. Dkt. No. 28, 37 at ¶¶18-21; Dkt. No. 36 at ¶¶7-9.

Not long after, Lange arrived on Green's floor with a nurse and interacted with an inmate housed a few cells down from Green. He was on the floor for less than a minute. He asserts that he did not hear Green threatening to harm himself, nor did he hear any other inmates indicate that Green was threatening to harm himself. Further, the nurse who was with Lange did not interact

2

with Green or inform Lange that Green was threatening to harm himself. Green remembers this encounter differently. He asserts that he and other inmates were yelling at Lange and the nurse about Green's intention to harm himself as they walked near Green's cell. According to inmate Trashun Campbell, who along with several other inmates provided a declaration with his version of what happened, he heard inmate Brandon McDuffie inform Lange that Green was suicidal, to which Lange responded, "Yeah, yeah." Green further asserts that Lange looked him in the eye as he walked past his cell, but never stopped or took any action to help him. Dkt. No. 28, 37 at ¶¶22-28; Dkt. No. 36 at ¶¶10-12; Dkt. No. 39 at 4.

Green asserts that, after being repeatedly ignored, he lost patience and slit his wrist, laid down, and placed his arm out his trap door. He states that he began to pass in and out of consciousness because of the blood loss. After about thirty minutes, officers came to help him. The laceration was about 5.5cm in length and needed seven sutures and three steri-strips to control the bleeding. Dkt. No. 28, 37 at ¶30; Dkt. No. 36 at ¶¶12-15.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show

3

that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Green claims that Defendants violated his constitutional rights when they ignored his repeated statements that he intended to harm himself and had the means to do so. The Seventh Circuit has repeatedly "recognized a jail or prison official's failure to protect an inmate from self-harm as one way of establishing deliberate indifference to a serious medical need." *Miranda v. Cnty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018). Of course, not every claim by a prisoner that he did not receive adequate protection will succeed. *Phillips v. Diedrick*, No. 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing *Estelle*, 429 U.S. at 104-05). To prevail on such a claim, a plaintiff will have to provide evidence showing that Defendants (1) were aware of an objectively serious risk of harm to him; and (2) knowingly or recklessly disregarded it. *Szopinski v. Koontz*, 832 F. App'x 449, 451 (7th Cir. 2020) (citations omitted).

Defendants assert that Green's claims fail because they were not aware that he posed a significant risk of harm to himself. They assert that video from the time they were near Green shows that none of them reacted as one would expect a person who hears an inmate threatening to commit suicide to react. They all went about their duties without looking in the direction of Green's cell or interacting with Green. According to Defendants, based on the video, no jury could reasonably conclude that any of them heard Green's threats and calls for help.

Green asserts, however, that their lack of response on the video does not prove that they did not hear him; it proves that they did not care. *See Kailin v. Village of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) ("Video evidence, however, can eviscerate a factual dispute only when the

4

video is so definitive that there could be no reasonable disagreement about what the video depicts."). Green states that Eikland acknowledged him and other inmates' yelling for help by confirming that she heard them and instructing them to stop yelling. He and other inmates swear under penalty of perjury that many inmates were yelling that Green was suicidal while Lange walked by his cell and that they heard Lange mutter, "yeah, yeah" in response to an inmate telling him that he should check on Green because he had a razor. Finally, Green asserts that Benisch looked at him after Green told him he had a razor and was suicidal, but Benisch continued to walk past him. Green asserts that he yelled after him, "so you gonna keep walking I'm about to kill myself," and that he held the razor up to the bars as Benisch passed so he could see it. Construing all facts in Green's favor, as the Court must because he is the non-moving party, the Court concludes that a jury could reasonably conclude from Green's description of his interactions with Defendants and their responses that they knew he posed a risk of significant harm to himself. Defendants are therefore not entitled to summary judgment on this basis.

Nor is Lange entitled to summary judgment because Green cut himself almost immediately after Lange walked away. Lange argues that, given how quickly Green acted, he did not have a reasonable opportunity to stop Green from harming himself. But Lange ignores Green's assertion that he cut himself because he was tired of being ignored. In other words, a jury could reasonably conclude that Green would not have cut himself if Lange had acknowledged him and/or helped Green as he requested.

Defendants next argue that they are entitled to summary judgment because Green cannot present evidence of a recoverable injury. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (holding that injuries consisting "only of minor scratches, quickly and easily treated with a gauze bandage" were insufficient to show the defendants' actions caused plaintiff injury or damages). Green's injury required seven sutures and three steri-strips to control the bleeding, and Green states

5

that he passed in and out of consciousness from the loss of blood. The Court rejects Defendants' suggestion that such an injury should be characterized as "trivial—indeed, almost nonexistent." Defendants mischaracterize the holding in *Flemming v. Breen*, 19-cv-1166, 2020 WL 4700911 (E.D. Wis. Aug. 13, 2020) to support their argument that, "[a]lthough Green's injury involved blood and was treated with sutures, this does not automatically rise to the level of an Eighth Amendment claim." Dkt. No. 27 at 4. But *Flemming* held only that no reasonable jury could conclude that the plaintiff posed a serious risk of harm to himself because he admitted that he cut himself as a means of coping with stress, not because he intended to seriously harm himself. *Flemming* did not, as Defendants suggest, determine that the plaintiff had not presented evidence of a recoverable injury. Defendants are therefore not entitled to summary judgment on this basis either.

Next, Defendants argue that they did not know of Green's mental health status and did not have reason to believe his threats were sincere. Green asserts that he and others plainly stated that Green was suicidal, had a razor, and intended to use it. It is hard to conceive of a more straightforward expression of intent to imminently harm oneself. If a jury believes that Green and others communicated with Defendants consistent with their representations, Defendants' knowledge of Green's mental health condition or history is irrelevant. Whether this was the *first* time or the *fortieth* time Green expressed an intent to seriously harm himself, the Constitution requires that Defendants not recklessly disregard the risk. Given the stakes, an official should assume that an inmate's threat to his life is sincere unless the official has reason to believe it is not. The Constitution does require inmates to first convince officials they are sincere. Defendants provide no evidence to support a conclusion that they had reason to believe Green did *not* pose a substantial risk of harm to himself. As such, assuming a jury were to believe Green's version, it could reasonably conclude that Defendants' failure to respond to Green's threats to commit suicide

6

violated the Eighth Amendment. Defendants are therefore not entitled to summary judgment on this basis.

Defendants also argue they are entitled to summary judgment under the doctrine of qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When reviewing a defendant's motion for summary judgment based on qualified immunity, the Court considers "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Pearson*, 555 U.S. at 232); *Estate of Clark v. Walker*, 865 F.3d 544, 549–50 (7th Cir. 2017).

Here, as noted above, an inmate's right to be free from deliberate indifference to his risk of self-harm was clearly established at the time Green cut himself. *See Miranda*, 900 F.3d at 349 ("We repeatedly have recognized a jail or prison official's failure to protect an inmate from self-harm as one way of establishing deliberate indifference to a serious medical need.") And for the reasons already explained, the evidence viewed in the light most favorable to Green would allow for a jury to find in his favor. Under these circumstances, Defendants are not entitled to qualified immunity. *Chilcutt v. Santiago*, No. 22-2916, 2023 WL 4678583, at *3 (7th Cir. July 21, 2023) ("[A] district court properly denies a motion for summary judgment based on qualified immunity when the facts, viewed in the light most favorable to the plaintiff, create a genuine dispute about whether the defendants' actions violated a clearly established constitutional right.") (citing *Estate of Clark v. Walker*, 865 F.3d 544, 551 (7th Cir. 2017)) Defendants' motion is therefore denied on that ground as well.

## NEXT STEPS

Because Defendants are not entitled to summary judgment, Green's claims will proceed to trial. Given the difficulty of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing evidence, the Court will make efforts to recruit a volunteer lawyer to represent Green at trial. The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The Court encourages Green to be patient as it makes efforts to recruit a lawyer to represent him. The process may take some time. The Court will promptly notify Green in the event a lawyer volunteers to represent him. In the meantime, the Court encourages the parties to explore whether settlement is possible.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 26) is **DENIED** and their motion for an extension of time to file their reply brief (Dkt. No. 41) is **GRANTED**.

Dated at Milwaukee, Wisconsin on February 3, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge